**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| YORLI HUFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CITIMORTGAGE, INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

### INTRODUCTION

1.      Plaintiff brings this action to secure redress from unlawful credit and collection practices engaged in by defendants.

2.      Plaintiff alleges violation of the Cranston Gonzales Amendment to the Real Estate Settlement Procedures Act, 12 U.S.C. §2605, the Illinois Consumer Fraud Act, 815 ILCS 505/2, and the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA").  Plaintiff also alleges common law claims.

3.      The Cranston Gonzales Amendment requires mortgage servicers to respond to written inquiries from borrowers.

4.      The ICFA prohibits unfair and deceptive acts and practices in connection with consumer transactions.

5.      The FCRA regulates the furnishing of credit information by CitiMortgage, Inc. to credit bureaus ("consumer reporting agencies").

### JURISDICTION AND VENUE

6.      This Court has jurisdiction under 12 U.S.C.§ 2605 (RESPA), 15 U.S.C. §1681p (FCRA), and 28  U.S.C. §§1331, 1337 and 1367.

7.      Venue and personal jurisdiction in this District are proper because:

a.      Defendant's collection communications were received by plaintiff

1

within this District; and

        b.      Defendant does or transacts business within this District.

## PARTIES

8.     Plaintiff Yorli Huff resides in a home that she owns in Naperville, Illinois.

9.     Defendant CitiMortgage, Inc. is a corporation chartered under New York law with its principal place of business in Missouri. It does business in Illinois. Its registered agent and office is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

10.    Defendant CitiMortgage, Inc. is engaged in the business of originating and servicing residential mortgage loans. It originates millions of dollars of loans each year and services millions of loans.

## FACTS

11.    Prior to February 18, 2010, plaintiff had a residential mortgage loan that was serviced by CitiMortgage, Inc.

12.    Plaintiff applied for and, on February 18, 2010, received, a loan modification from CitiMortgage, Inc. A copy of the loan modification agreement is attached as Exhibit A.

13.    Plaintiff was current on her mortgage at the time she applied for the loan modification.

14.    On or about April 12, 2010, CitiMortgage, Inc. sent plaintiff a statement reflecting that the terms of the loan modification had been implemented. See Exhibit B.

15.    Plaintiff continued making her modified mortgage payments as agreed.

16.    CitiMortgage, Inc. continued to send plaintiff statements reflecting the modified terms through November 5, 2010. See Exhibit C.

17.    Exhibit C states that, as of November 5, 2010, the payment due for December 1, 2010 was $1,368.51, which reflects a normal monthly payment under the loan modification.

18.    On November 9, 2010, CitiMortgage, Inc. sent plaintiff a letter (Exhibit D)

2

stating that the loan was in default. It claimed that plaintiff owed $22,503.66 by December 10, 2010, including $991.56 in late charges and $27.00 in "delinquency related expenses."

19. Between November 9, 2010 and November 27, 2010, plaintiff spoke to dozens of representatives from CitiMortgage, Inc.'s collections department and pieced together from those phone calls that the loan modification had been notarized and closed in April 2010, but had then been "unbooked" because CitiMortgage, Inc. had erred on the deferral amount. One collections representative stated that plaintiff would have to apply for a new loan modification.

20. On November 27, 2010, plaintiff sent a letter to CitiMortgage, Inc. (Exhibit E) explaining that Exhibit D and "unbooking the loan" were "in violation of the terms and the original agreement that we mutually agreed to in April 2010." Plaintiff included a list of her payments since May 2010 and the dates that CitiMortgage, Inc. had accepted them.

21. Plaintiff simultaneously filed complaints through the Illinois Attorney General Consumer Fraud Bureau and the Better Business Bureau.

22. On February 23, 2011, CitiMortgage, Inc. sent plaintiff a purported response (Exhibit F) stating, "We are unable to recognize funds that are less than the scheduled amount due as a payment for your mortgage loan."

23. On March 2, 2011, plaintiff sent a letter to Equifax Credit Information Services, Inc. (Exhibit G) requesting correction of the "tradeline" relating to plaintiff's mortgage.

24. On March 3, 2011, CitiMortgage, Inc. sent plaintiff a letter (Exhibit H) purportedly responding to plaintiff's complaints through the Illinois Attorney General Consumer Fraud Bureau and the Better Business Bureau.

25. Exhibit H acknowledges, "According to our records, you were originally approved for a loan modification effective February 15, 2010," and then claims, "It was determined in June 2010 that the loan modification was completed incorrectly, as the amount of the principal balance to be deferred exceeded the allowable limit according to the investor... As of November 2010, the modification was rescinded and the mortage loan reverted back to the original terms...

Please also be advised, when the loan modification was rescinded, any payments applied under the modified rate were reversed from the mortgage loan and reapplied based on the actual contractual mortgage payment due prior to the loan modification."

26.     On March 7, 2011, plaintiff sent a letter to CitiMortgage, Inc. Chief Executive Office Vikram Pandit (Exhibit I) detailing CitiMortgage, Inc.'s purported rejection of the loan modification agreement that had already been closed and notarized and requesting that CitiMortgage, Inc. review and honor the loan modification agreement of April 2010.

27.     On March 8, 2011, plaintiff sent a letter to Experian (Exhibit J) requesting correction of the "tradeline" relating to plaintiff's mortgage.

28.     Prior to March 15, 2011, plaintiff also sent a letter to TransUnion requesting correction of the "tradeline" relating to plaintiff's mortgage.

29.     On information and belief, based on statements by the credit bureaus, the bureaus requested that CitiMortgage, Inc. investigate the dispute.

30.     By letter of March 15, 2011, Equifax responded to plaintiff's March 2, 2011 correspondence, reporting that CitiMortgage, Inc. had verified that the loan was past due.  A copy is attached as Exhibit K. This statement was false.

31.     By letter of March 17, 2011, TransUnion responded to plaintiff's dispute, reporting that CitiMortgage, Inc. had verified that the loan was past due.  A copy is attached as Exhibit L. This statement was false.

32.     Exhibit L claims that plaintiff was paying as agreed from August through October 2010, but that she was 120 days past due as of November 2010.

33.     On information and belief, CitiMortgage also verified that the loan was past due to Experian.

34.     On April 27, 2011, CitiMortgage, Inc. sent plaintiff a letter (Exhibit M) purportedly responding to plaintiff's letter of March 7, 2011.

35.     Exhibit M acknowledges again: "Our records indicate you were approved for

4

a loan modification in February 2010... The original modification was to reduce your interest rate from 6.125% to 3.00% with a 313 month term deferring $72,000.00."

36.     Exhibit M also states, "In June 2010, we discovered an issue with the modification changes that took place to your account. The principal balance deferral was over the allowable limits for a Fannie Mae loan modification. With this being said, the modification was un-booked and re-worked... We are in a position to extend new terms to you. These terms are for a 3.00% interest rate for 480 months with no deferral."

37.     On May 10, 2011, CitiMortgage, Inc. sent plaintiff a new loan modification agreement (Exhibit N).

38.     Whereas the unpaid principal balance prior to the loan modification agreement of February 2010 is $259,651.61, the unpaid principal balance under the loan modification agreement of February 2010 was $194,496.85. However, the unpaid principal balance under the loan modification agreement of May 2011 is $272,360.95 – $12,709.34 *higher* than before plaintiff ever had her loan modified.

39.     Whereas the monthly principal and interest payment under the loan modification agreement of February 2010 is $896.64, the monthly principal and interest payment under the loan modification agreement of May 2011 is $975.01.

40.     Further, whereas the maturity date under the loan modification of February 2010 is April 1, 2036, the maturity date under the loan modification of May 2011 is May 1, 2051. The loan modification of May 2011 would require plaintiff to make mortgage payments for more than fifteen years beyond the period to which she had agreed in February 2010.

41.     Under the loan modification of February 2010, plaintiff would have paid a total of $352,648.32. Under the loan modification of May 2011, plaintiff would have paid a total of $468,004.80. This constitutes an increase of $115,356.48.

42.     Neither the loan modification agreement of May 2011 nor the cover letter dated May 10, 2011 included a breakdown of the fees assessed.

5

43.     On May 12, 2011, CitiMortgage, Inc. sent plaintiff a payoff statement (Exhibit O) showing $9,120.30 for interest from 11/1/10 to 6/1/11, $7,766.42 escrow overdraft, $495.78 late charge, and a $40.00 recording fee.

44.     On May 17, 2011, plaintiff, through counsel William A. Miceli, sent a letter to CitiMortgage, Inc. (Exhibit P) disputing the inclusion of $17,098.28 "interest, costs, and expenses" in the offered loan modification of May 2011.

45.     On May 25, 2011, plaintiff through counsel William A. Miceli, sent a letter to CitiMortgage, Inc. Chief Executive Office Vikram Pandit (Exhibit Q) disputing the $9,120.30 "finance charges" that appeared on the payoff letter of May 12, 2011.

46.     On June 8, 2011, CitiMortgage, Inc. sent plaintiff a new loan modification agreement (Exhibit R).

47.     Whereas the unpaid principal balance under the loan modification agreement of February 2010 is $259,651.61 and the unpaid principal balance under the loan modification agreement of February 2010 is $194,496.85, the unpaid principal balance under the loan modification agreement of June 2011 is $270,671.21 – $11,019.60 *higher* than before plaintiff ever had her loan modified.

48.     Whereas the monthly principal and interest payment under the loan modification agreement of February 2010 is $896.64, the monthly principal and interest payment under the loan modification agreement of June 2011 is $968.96.

49.     Under the loan modification of February 2010, plaintiff would have paid a total of $352,648.32.  Under the loan modification of June 2011, plaintiff would have paid a total of $465,100.80.  This constitutes an increase of $112,452.48.

50.     Further, whereas the maturity date under the loan modification of February 2010 is April 1, 2036, the maturity date under the loan modification of June 2011 is June 1, 2051. The loan modification of June 2011 would require plaintiff to make mortgage payments for more than fifteen years beyond the period to which she had agreed in February 2010.

6

51.     On June 17, 2011, CitiMortgage, Inc. sent plaintiff a letter (Exhibit S) purportedly responding to plaintiff's letters of May 17, 2011 and May 25, 2011, stating, "It has been explained to you that the original modification completed on February 15, 2010 can no longer be extended to you."

52.     On June 14, 2011, plaintiff was rejected for credit by Planites Credit Union, citing, "Delinquent past or present accounts." See Exhibit T.

53.     On September 30, 2011, plaintiff was rejected for credit by Chase Bank USA,

N.A., citing, "Delinquent past/present credit obligations." See Exhibit U.

54.     On December 6, 2011, plaintiff obtained a credit report from TransUnion (Exhibit V) showing that her only adverse account is the mortgage with CitiMortgage, Inc.

55.     Plaintiff has suffered substantial damage from defendant's conduct, including:

        a.      Emotional distress and stress;

        b.      Public humiliation and embarrassment;

        c.      Expenditure of money and time to rectify defendant's conduct;

        d.      Injury to her credit, directly resulting in two denials of credit;

        e.      Potential tax liability resulting from the mis-allocation of her mortgage interest payments.

## COUNT I – RESPA

56.     Plaintiffs incorporate paragraphs 1-55.

57.     Exhibits I, P, and Q are "qualified written requests" as defined in the Cranston-Gonzales amendment to RESPA, 12 U.S.C. §2605(e).

58.     In violation of its obligations under the Cranston-Gonzales amendment, CitiMortgage, Inc. failed to take corrective action.  Citi also reported information regarding allegedly late payments to one or more credit bureaus within 60 days from plaintiff's qualified

written requests in violation of 12 U.S.C. §2605(e)(3).

59.    Plaintiff has been injured as a result.

60.    Defendant engages in a pattern and practice of not responding to qualified

written requests.[1]

WHEREFORE, plaintiff requests that the Court enter judgment in favor of the

plaintiff and against defendant for:

(1)    Compensatory damages;

(2)    Statutory damages;

(3)    Attorney's fees, litigation expenses and costs of suit; and

(4)    Such other or further relief as the Court deems proper.

## COUNT II – FAIR CREDIT REPORTING ACT

61.    Plaintiff incorporates paragraphs 1-55.

62.    CitiMortgage, Inc. violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b), by falsely verifying to the credit bureaus that Plaintiff's mortgage was over 120 days behind when they contacted CitiMortgage, Inc. in response to Plaintiffs' disputes.

63.    Section 1681s-2(b) provides:

**(b) Duties of furnishers of information upon notice of dispute.**

**(1) In general. After receiving notice pursuant to section 611(a)(2) [15 USC §1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall**

**(A) conduct an investigation with respect to the disputed information;**

**(B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USC §1681i(a)(2)];**

**(C) report the results of the investigation to the consumer reporting agency; and**

---

[1]Plaintiff's counsel is aware of several individuals whose qualified written requests Defendant did not respond to.

**(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.**

**(2) Deadline. A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 611(a)(1) [15 USC §1681i(a)(1)] within which the consumer reporting agency is required to complete actions required by that section regarding that information.**

64.     CitiMortgage, Inc. committed such violations willfully or negligently, thereby

violating 15 U.S.C. §1681n and/or §1681o.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against defendant for:

(1)     Appropriate compensatory, general and punitive damages;

(2)     Costs of suit; and

(3)     Such other or further relief as the Court deems proper.

## COUNT III -- BREACH OF CONTRACT

65.     Plaintiff incorporates paragraphs 1-55.

66.     CitiMortgage, Inc. and plaintiff executed the loan modification agreement attached as Exhibit A.

67.     Plaintiff has made all payments due under Exhibit A.

68.     From November 2010 through the present, CitiMortgage, Inc. has directly refused to honor Exhibit A.

69.     Such conduct amounted to a breach of contract.

70.     Plaintiff has been injured as a result.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendant for:

(1)     Compensatory damages;

(2)     Costs  of suit; and

(3)     Such other or further relief as the Court deems proper.

## COUNT IV  -- ILLINOIS CONSUMER FRAUD ACT

71.     Plaintiff incorporates paragraphs 1-55.

72.     CitiMortgage, Inc. engaged in unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2:

a.      By executing a loan modification with plaintiff, accepting plaintiff's payments under the loan modification, and later unilaterally rescinding the loan modification and declaring plaintiff to be in default; and

b.      By ignoring its obligations under RESPA.

73.      Plaintiff has been injured as a result.

74.     Defendant engages in a pattern and practice of executing loan modification agreements and later failing to honor them.

75.     CitiMortgage, Inc. engaged in such conduct in the course of trade and commerce, and with reckless disregard of the plaintiffs' rights.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendant for:

(1)     Compensatory damages;

(2)     Punitive damages;

(3)     Attorney's fees, litigation expenses and costs of suit; and

(4)     Such other or further relief as the Court deems proper.


s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner

10

Catherine A. Ceko
EDELMAN, COMBS, LATTURNER
       & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)


## **<u>JURY DEMAND</u>**

Plaintiff demands trial by jury.


<u>s/ Daniel A. Edelman</u>
Daniel A. Edelman

11

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

<u>s/Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\26447\Pleading\Complaint_Pleading.wpd